IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00778 |
|     Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 1.01 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 440002800150000000, OWNED BY DWAYNE P. BROWN AND ANN M. BROWN, et al., | : | |
| | : | |
|     Defendants. | : | |
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00783 |
|     Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 101 ACRES, AND 41,342 SQ. FT. MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 30000EE01600000000, OWNED BY BRADLEY E. HERR AND ELIZABETH M. HERR, et al., | : | |
| | : | |
|     Defendants. | : | |

| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00785 |
| Plaintiff | : | |
| | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 1.5561 ACRES, MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 30000ED010300000000, OWNED BY MYRON A. HERR AND MARY JO HERR, et al., | : | |
| | : | |
| Defendants. | : | |
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00786 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 1.010 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 44000280024000000, OWNED BY DOUGLAS W. HILYARD AND TESSA J. HILYARD, et al., | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM

## October 24, 2013

For the following reasons, the Court denies the motions of Columbia Gas

Transmission, LLC (hereinafter, "Columbia Gas") for partial summary judgment and for immediate possession of certain easements.

**I.     Background**

The parties agree[1] that Columbia Gas is an interstate natural gas company subject to the jurisdiction of the Federal Energy Regulatory Commission (hereinafter, "FERC"). Columbia Gas currently operates a natural gas pipeline that runs in and around York County, Pennsylvania. The pipeline has been designated "Line 1655," and the Court will adopt this nomenclature.

Columbia Gas comes to this Court because it wants to replace and reroute a portion of Line 1655 away from the Line's current location, which has become heavily populated.[2] Columbia Gas envisions a new and improved Line 1655 that, at the widest point, diverts approximately a quarter-mile from the old one. This diversion in effect takes Line 1655 out from under the land where Columbia Gas

---

[1]The facts recited are taken from the parties's respective L.R. 56.1 statements of fact filed in each case, as well as from the parties admissions at oral argument on October 10, 2013.

[2]"[Line 1655] was placed in service about 60 years ago. . . . It goes through what has now been identified as a high consequence area, an HCA. . . . To sort of put it in laymen's terms, you put a pipeline in the ground in 1950 and the communities grow up around it. So it's no longer an area that you necessarily want to have a pipeline in, particularly one that is 60 years old." (Oral Ar. Tr., Oct. 10, 2013).

3

currently has pipeline easements, and removes it some distance yonder to plots where Columbia Gas does not possess such easements. Columbia Gas negotiated with distant landowners to obtain the easements necessary to construct the replacement Line 1655, but no satisfactory arrangement could be struck with respect to the property of at least four landowning couples: Dwayne and Ann Brown; Bradley and Elizabeth Herr; Myron and Mary Jo Herr; and Douglas and Tessa Hilyard. Negotiations having failed, in March, 2013, Columbia Gas filed suit in this Court, naming the land of the four couples and the couples themselves as defendants (hereinafter, the "landowners"), and asserting the right to take the easements by power of eminent domain.

On May 24, 2013, eager to commence and complete construction of the replacement pipeline, Columbia Gas filed a motion for partial summary judgment and for immediate possession of the necessary easements.

**II.  Standard of Review**

The "right to condemn the property in question" is a "threshold requirement" for awarding Columbia Gas immediate possession of the necessary easements. <u>E. Tennessee Natural Gas Co. v. Sage</u>, 361 F.3d 808, 825 (4th Cir. 2004). Accordingly, the Court should first determine whether Columbia Gas's motion for partial summary judgment – which purportedly establishes Columbia Gas's right to

condemn the easements – is meritorious. If the motion lacks merit, then there is no need to consider the additional factors that control whether Columbia Gas is entitled to immediate possession of the easements.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" where it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" where "the evidence is such that a reasonable [fact-finder]," giving credence to the evidence favoring the nonmovant and making all reasonable inferences in the nonmovant's favor, "could return a verdict for the nonmoving party." Id.

## III. Discussion

Columbia Gas's argument for summary judgment sends the Court page-flipping through the Code of Federal Regulations as follows. On or about January 7, 1983, FERC issued Columbia Gas a certificate of public convenience and necessity (hereinafter, the "certificate") that authorizes Columbia Gas to "conduct many routine activities . . . on a self-implementing basis without further authorization by the Commission." (Ex. 2, ECF No. 1-4, at 2 (hereinafter, "Ex.

5

2")).³ Among other things, the certificate automatically authorizes Columbia Gas's performance of "the activities specified in Subpart F of Part 157 of the Commission's Regulations, as amended from time to time." (Ex. 2, at 4). Subpart F of Part 157 of the Commission's Regulations provides, in turn, that as long as the project does not cost more than $11,000,000, Columbia Gas is automatically "authorized to make miscellaneous rearrangements of any facility, or acquire, construct, replace, or operate any eligible facility."18 C.F.R. §§ 157.203(a)-(b), 157.208(a) & (d). In relevant part, "eligible facility" includes "main line, lateral, and compressor replacements that do not qualify under § 2.55(b) of [Chapter I of C.F.R. Title 18] because they will result in an incidental increase in the capacity of main line facilities, or because they will not satisfy the location or work space requirements of § 2.55(b)." 18 C.F.R. § 157.202(b)(2)(i).

Section 2.55(b) is an exemptive provision that relieves natural gas companies from the generally applicable requirement of having to obtain a certificate of public convenience for "the construction or extension of any facilities." 15 U.S.C. § 717f(c). Specifically, it exempts "[f]acilities which constitute the replacement of existing facilities that have or will soon become

---

³Citations to record documents refer to the docket in 4:13-cv-00778 unless otherwise noted.

physically deteriorated or obsolete, to the extent that replacement is deemed advisable, if . . . [t]he replacement facilities . . . will be located in the same right-of-way or on the same site as the facilities being replaced, and will be constructed using the temporary work space used to construct the original facility."

Given these provisions, Columbia Gas argues that replacement Line 1655 is an automatically authorized "replace[ment]" of an "eligible facility" because the project "will not satisfy the location or work space requirements of § 2.55(b)." That is, the diverted pipeline will <u>not</u> be "located in the same right-of-way or on the same site as the facilities being replaced," as required by § 2.55(b), with the upshot that the replacement Line 1655 is an "eligible facility" that Columbia Gas's certificate automatically authorizes. (Pl. Supp. Br., ECF No. 14, at 1-6).

As far as the authority to take the necessary easements goes, Columbia Gas relies on 15 U.S.C. §717f(h), which provides that:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

7

Columbia Gas argues that, taken altogether, the applicable regulations and its eminent domain authority give it the right to condemn the necessary easements.

The Court, however, sees a fly in the ointment. Specifically, the Court disagrees with Columbia Gas's position that replacement Line 1655 can be relocated approximately a quarter-mile away from the old Line 1655 to circumvent a population center and still be considered an "eligible facility."

Columbia Gas's contention (as expressed by counsel at oral argument on October 10, 2013) is that its certificate automatically authorizes relocation of replacement Line 1655 literally anywhere on earth, so long as the replacement "will not satisfy the location or work space requirements of § 2.55(b)." But this interpretation of the regulations puts an excessively expansive gloss on the common meaning of "replace," see Webster's Third New International Dictionary, Unabridged, s.v. "replace," accessed October 23, 2013, http://unabridged.merriam-webster.com ("1: to place again: restore to a former place, position, or condition"), a term that generally does not imply significant relocation. Moreover, Columbia Gas's interpretation is seemingly contrary to the structure of the regulations, which equate the "relocation of existing facilities" with another defined term, "miscellaneous rearrangement," see 18 C.F.R. §

8

157.202(b)(6), not with "replacement[]," see 18 C.F.R. § 157.202(b)(2)(i). The meaning of "replacements that do not qualify under § 2.55(b) of this chapter because they . . . will not satisfy the location or work space requirements of § 2.55(b)," is, at best, ambiguous as it relates to Columbia Gas's replacement Line 1655.

In the face of this ambiguity, the Court looks to the relevant agency's interpretation of its own regulations. See Decker v. Nw. Envtl. Def. Ctr., 133 S.Ct. 1326, 1337 (2013) ("When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation.") (internal quotation marks omitted). Here, the relevant agency is FERC, which provided a fairly definitive interpretation of the operative provisions in 2003 when it proposed new rules to give pipeline companies greater flexibility to reconstruct pipelines during emergencies caused by "deliberate effort[s] to disrupt the flow of natural gas." See Emergency Reconstruction of Interstate Natural Gas Facilities Under the Natural Gas Act, 68 Fed. Reg. 4120 (proposed Jan. 17, 2003) (to be codified at 18 C.F.R. pt. 157).

Speaking of the authority then-available to pipeline companies, the agency explained:

> [P]art 157, subpart F, permits replacement construction that uses

9

> temporary workspace beyond the bounds of the temporary workspace previously used to construct the original facilities as necessary to install replacement facilities. These regulations also permit locating a portion of mainline, lateral, or compressor replacement facilities outside, but presumably adjacent to, an existing right-of-way where, for whatever reason, the new facilities could not be placed entirely within the original facilities' existing right-of-way. These regulations, however, do not appear to contemplate mainline construction over an entirely different route as may be necessary to circumvent the site of a disaster if immediate replacement is necessary before the original site is again available.

Emergency Reconstruction, 68 Fed. Reg. at 4122. The agency repeated this general idea a number of times: "part 157 . . . does not permit the extensive deviation from an existing right-of-way that would presumably be necessary to circumvent a restricted or quarantined area," id. at 4123; "[part 157] was broadened incrementally in 1999 to [allow] mainline replacements . . . that . . . did not lie within the original facilities' footprint, and consequently were outside of the section 2.55(b) replacement parameters . . . [but] this modification in the breadth of eligible facilities did not contemplate the more extensive rerouting that would be required to reach around a cordoned accident area," id.; "[the 1999 broadening of part 157] recognized the need to grant natural gas companies the flexibility to act under blanket certificate authority to replace facilities where construction of new facilities might spill over the original temporary workspace or permanent right-of-way . . . [but did not] envision[] replacement of facilities outside the

existing right-of-way by the creation of an entirely new route due to the need to circumvent an accident site," id. at 4123 n.20.

Part 157 ultimately was amended to give pipeline companies additional authority during emergencies, see 68 Fed. Reg. 31596 (May 19, 2003), but Columbia Gas concedes that there is no emergency here (Oral Ar. Tr., Oct. 10, 2013). Accordingly, Columbia Gas must rely on the provisions of Part 157 that FERC interpreted in its 2003 notice of proposed rulemaking, quoted at length supra.

Applying the regulations as interpreted by FERC (the Court does not find FERC's interpretation "plainly erroneous or inconsistent with the regulation") to replacement Line 1655, it is plain that the project is not automatically authorized as "replace[ment]" of an "eligible facility" pursuant to 18 C.F.R. §§157.202(b)(2)(i) & 157.208(a). The right-of-way necessary for replacement Line 1655 is not "outside, but . . . adjacent to" old Line 1655's right-of-way; it does not merely "spill over [from] the original temporary workspace or permanent right-of-way." Rather, Columbia Gas is avowedly rerouting replacement Line 1655 to avoid a congested area, necessitating a new right-of-way approximately a quarter-mile distant. It is, to paraphrase, "creat[ing] . . . an entirely new route due to the need to circumvent [a congested area]." Accordingly, replacement Line 1655 cannot be

11

properly characterized as the "replace[ment]" of an "eligible facility."

For that reason alone, Columbia Gas's motion for partial summary judgment must be denied, and because Columbia Gas has not established the right to condemn the necessary easements at this time, its motion for immediate possession must also be denied.[4]

Since Columbia Gas has expressly disavowed that replacement Line 1655 constitutes a "miscellaneous rearrangement" (Oral Ar. Tr., Oct. 10, 2013) – defined in relevant part by regulation as "any rearrangement of a facility . . ., including . . . relocation of existing facilities: . . . (ii) [w]hen required by . . . encroachment of

---

[4]The Court notes two things. First, defendants Bradley E. Herr and Elizabeth M. Herr (and their property) failed to respond to Columbia Gas's motion for partial summary judgment. In accordance with Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168 (3d Cir. 1990), and L.R. 7.6 & 56.1, this effects a "waiver of the [Herr's] right to controvert the facts asserted by [Columbia Gas] in the motion for summary judgment or the supporting material accompanying it." Anchorage Assoc., 922 F.2d at 175-76. This does not result in Columbia Gas's victory on the motion, however, because even accepting that all of the facts asserted by Columbia Gas are undisputed, the analysis supra reveals that Columbia Gas is not entitled to judgment as a matter of law. Id. at 176.

Second, for those defendants other than Bradley E. Herr and Elizabeth M. Herr, the Court is inclined to deny Columbia Gas's motion for partial summary judgment at this time for the additional reason that the defendants should be given the opportunity to properly controvert Columbia Gas's assertion that the replacement Line 1655 project meets the cost requirements of 18 C.F.R. § 157.208(d), including the opportunity for additional discovery beyond the 60 days allowed after the July 9, 2013 case management conference. See Fed. R. Civ. P. 16(b)(4) & 56(e)(1).

residential, commercial, or industrial areas" – the Court does not consider whether the replacement Line 1655 project could have been automatically authorized as such.[5]

## IV. Conclusion

For the foregoing reasons, the Court denies the motions of Columbia Gas Transmission, LLC (hereinafter, "Columbia Gas") for partial summary judgment and for immediate possession of certain easements.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[5]Both parties apparently agree that a "miscellaneous rearrangement" of facilities can be performed only on the same property as the existing facilities. (See Def. Opp'n Br., ECF 19, at 7-8; Oral Ar. Tr., Oct. 10, 2013). It is not clear to the Court why this should be so. See 18 C.F.R. § 157.202(b)(6) (listing three characteristics of "miscellaneous rearrangements" in the disjunctive, indicating that the first listed characteristic – that the rearrangement occur "(i) on the same property" – is not required if one of the other two apply). See also Texas E. Transmission Corp., 82 FERC P 62071 (1998) (holding that relocation of pipeline "35 feet to the northeast of the existing pipeline and [affecting] approximately 3.51 acres of land and one landowner, in addition to [the landowner of the location of the existing facilities and requiring] new permanent right-of-way," qualified as "miscellaneous rearrangement").