## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : | No. 4:13-cv-00783 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| 101 ACRES AND 41,342 SQ. FT. MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, et al., | : : : : | |
| | : | |
| Defendants. | : | |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • ◆ • • • • • • • • • • • • • • • • • • • • • • • • • •

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : | No. 4:13-cv-00785 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| 1.5561 ACRES MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, et al., | : : : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

## October 26, 2016

## I.     BACKGROUND

The following background is well-known to both the Court and the parties, and is drawn from the parties' pretrial memoranda.

Defendant Elizabeth Herr is the record owner of real property consisting of approximately 101 acres, located in Heidelberg Township, York County, Pennsylvania, as described by deed dated February 7, 1991, recorded in Deed Book 127 at Page 793 and by deed dated July 26, 2001, recorded in Deed Book 1488 at Page 7615.

Defendants Myron and Mary Jo Herr are the record owners of real property consisting of approximately 1.5561 acres, also located in Heidelberg Township and abutting Elizabeth Herr's property, as described by deed dated August 19, 2004, recorded in Deed Book 1674 at Page 3907 and by deed dated October 5, 2004, recorded in Deed Book 1682 at Page 3306.

On January 7, 1983, the Federal Energy Regulatory Commission ("FERC") issued to Plaintiff Columbia Gas Transmission, LLC, a Certificate of Public Convenience and Necessity authorizing it "to conduct many routine activities," including the construction of a natural gas transmission pipeline known as Line 1655 on Defendants' properties.

On March 26, 2013, unable to obtain easements by agreement as to the two properties owned by the Herrs and two properties owned by other landowners, Plaintiff filed its Complaints in Condemnation against the properties owned by those four sets of landowners.[1] Subsequently, Plaintiff filed a motion for partial summary judgment asking the Court to affirm Plaintiff's power of eminent domain under the FERC Certificate and a motion for a preliminary injunction seeking immediate possession of the Easements.

On October 24, 2013, the Court denied Plaintiff's motions. On December 13, 2013, Plaintiff filed a Rule 59(e) Motion to Alter, Amend, and/or Reconsider Judgment that the Court denied on May 20, 2014. Thereafter on May 22, 2014, Plaintiff appealed the October 24, 2013, and May 20, 2014, Orders to the United States Court of Appeals for the Third Circuit.

On September 26, 2014, the Third Circuit reversed this Court's October 24, 2013 Order, clarified Plaintiff's right to condemn the easements that it sought, and directed this Court to enter an order awarding Plaintiff immediate possession of the contested easements. On January 21, 2015, Defendants

---

[1]   The Court notes for the record that the initial Complaints in Condemnation involved eight separate properties, though prompt settlements between the parties left only four properties in dispute.

appealed the Third Circuit's order to the United States Supreme Court. The

Supreme Court denied certiorari on May 4, 2015.

In March 2015, Plaintiff constructed Line 1655 on Defendants' properties.

As security for immediate possession, Plaintiff posted an injunction bond in the

amount of $120,000 as to the four properties on which Plaintiff was not able to

secure the easements by agreement after filing the Complaints in

Condemnation.[2]

The sole remaining issue is that of just compensation. The Court held its

final pretrial conference in this matter on October 13, 2016. The parties have

submitted various motions <u>in limine</u>, to which I now turn.

## II.   LAW

"A motion <u>in limine</u> is a motion made prior to trial for the purpose of

prohibiting opposing counsel from mentioning the existence of, alluding to, or

offering evidence on matters so highly prejudicial to the moving party that a

timely motion to strike or an instruction by the court to the jury to disregard the

offending matter cannot overcome its prejudicial influence on the jurors'

---

[2]   Subsequently, Columbia settled with Dwayne and Ann Brown and Douglas and
Tessa Hilyard, the other two sets of Defendants, and the cases against the Browns
and the Hilyards have been dismissed with prejudice.

minds."[3] "The standard of review for the admission or exclusion of evidence is generally abuse of discretion. If a party fails to preserve an evidentiary ruling, this Court reviews for plain error."[4]

"In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law."[5] Accordingly, "[a]n abuse of discretion occurs only where the district court's decision is 'arbitrary, fanciful, or clearly unreasonable'—in short, where 'no reasonable person would adopt the district court's view.'"[6] The United States Court of Appeals for the Third Circuit "will not remand or reverse if the admission or exclusion of evidence constituted harmless error."[7] "An error is harmless only if it is highly probable that the error[ ] did not affect the outcome of the case."[8] "It is the province of the trial

---

[3]   O'Rear v. Fruehauf Corp., 554 F.2d 1304, 1306 (5th Cir. 1977).

[4]   Tourtellotte v. Eli Lilly & Co., No. 15-1090, 2016 WL 146455, at *16 (3d Cir. Jan. 13, 2016).

[5]   Quercia v. United States, 289 U.S. 466, 469 (1933) (Hughes, C.J.).

[6]   Green, 617 F.3d at 239 (quoting United States v. Starnes, 583 F.3d 196, 214 (3d Cir.2009)).

[7]   Id.

[8]   Id. (internal quotations omitted).

judge to weigh any materiality against any prejudice and, unless the judge's

reading is 'off the scale,' his discretion is not abused."[9]

## III.   ANALYSIS

The pending motions in limine are disposed of consistent with the

following analysis.

### A.   Plaintiff's Motion to Exclude Expert Testimony Based on False Extraordinary Assumptions, ECF No. 119, is DENIED.

Plaintiff asks this Court to exclude Defendant's expert witness, Michael

Acquaro-Mignogna based upon certain "extraordinary assumptions" made by

Mr. Mignogna throughout his valuation of the condemned rights. Specifically,

Plaintiff's point to assumptions made Mr. Mignogna involving the use of farm

equipment over the subject rights-of-way, as well as the permanency of such

access, which it contends will be proven false at trial. From the outset, I would

note that disposition of this motion was a close one, and I believe that this speaks

to the Court's unease with what may amount to several underlying factual

shortcomings evident in the disputed assumptions made by this appraiser.

"Courts have found that most contentions that expert assumptions are

unfounded go to the weight, not the admissibility, of the testimony, and a district

court has discretion . . . to determine whether the expert acted reasonably in

---

[9]   United States v. Shelley, 405 F.3d 1195, 1201 (11th Cir. 2005).

making assumptions of fact upon which he would base his testimony."[10] "Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."[11]

In 2015, I excluded two experts in a case called <u>Bruno v. Bozzuto's</u>,[12] where the pair relied without question on unverified projections in preparing a market study, which data was later revealed to be contradicted by the actual sales data. In <u>Bruno</u>, I wrote that the projections lacked "any basis in fact or market reality," and the reports were therefore unamenable to minor credibility assessments because they were so fundamentally skewed.

I believe that Mr. Mignogna's report is, by a slight margin, admissible. In contrast with <u>Bruno</u> and other cases excluding experts at the pretrial stage, I think that the status of the present witness can be distinguished on two grounds. First, I believe, that based on my review of his deposition, Mr. Mignogna did, at the time that he conducted his valuation, have at least some rational basis to make the contested extraordinary assumptions upon which he relied. In his own

---

[10]   <u>In re Mushroom Direct Purchaser Antitrust Litig.</u>, No. 06-0620, 2015 WL 5767415, at *6 (E.D. Pa. July 29, 2015).

[11]   <u>Krys v. Aaron</u>, 112 F. Supp. 3d 181, 199 (D.N.J. 2015).

[12]   311 F.R.D. 124.

words, Mr. Mignogna made those assumptions to address purported legal ambiguities in the written terms of the easements, whose proper resolution was unclear to him at that juncture.

Second, and perhaps more problematically, it is not evident to me at this stage in the proceedings that his assumptions are in fact entirely false—though the weight of the evidence as presented in the pretrial filings does appear to tip in Plaintiff's favor as to the now-questionable nature of Defendant's initial valuation. Were a more developed record available, for instance, I would be more comfortable excluding Mr. Mignogna outright. That is not the case here. Instead, I believe the more proper approach is for the jury to hear his assumptions, hear all of the factual evidence as to the scope and burden of the present easements, and weigh his testimony accordingly.

I note that although the term "extraordinary assumption" does make it sound as though this witness ought to be excluded without much hesitation, as if he were making exceedingly broad assumptions of fact, that does not appear to be the case in practice. Instead, legal practitioners and legal rules should encourage the development of a system wherein appraisers, as per the Uniform Standards of Professional Appraisal Practice (USPAP) guidelines, do not hesitate

to list the assumptions inherent in their analysis. Legal practitioners do not want such witnesses to hide their assumptions, which would hinder our ability (or the jury's ability) to evaluate their conclusions. Granted, I find it peculiar that these stepping stones are officially termed "<u>extraordinary</u> assumptions," but assumptions of this kind are nevertheless common in many empirical fields. I therefore would agree with the Defendants that the term is an unfortunate misnomer.

In response to these considerations, Plaintiff contends that its witnesses will entirely rebut Mr. Mignogna's testimony regarding the use of farm equipment and the permanency extraordinary assumptions. I tend to agree that such rebuttal would likely eviscerate Mr. Mignogna's conclusions in the mind of any reasonable juror, and I would recommend that the Defendants consider the effect on a jury that such rebuttal testimony might have, but I am not inclined to invade the jury's role in that manner. Instead, my preference is to afford counsel for Plaintiff a certain latitude during the cross-examination of this witness.

I also note that the Defendants advance the argument that retrospective statements by Plaintiff seeking to clarify claimed ambiguities as to the breadth of the easements are insufficient to disprove Mr. Mignogna's extraordinary

assumptions and otherwise will not ensure that Plaintiff will not seek to use the easements for such purposes in the future.

This Court disagrees with Defendants on both counts, and I believe it is important to emphasize this point to the extent that a reasonable settlement can still be effected prior to trial. First, Plaintiff's representations that the easements do not give it the right to use the land in the manner or to the extent assumed by Mr. Mignogna would appear to me to entirely undercut his valuation, as I have read it. Second, now having made several representations to this Court that it will not seek to use the easements for those assumed purposes and that the easements do not grant it those rights in the first place, this Court would not hesitate to find Columbia Gas estopped from advancing such rights in the future, especially in light of written settlement agreement between the parties relating to the use of farming equipment across the condemned land.

Consistent with the preceding analysis, the motion to exclude Mr. Mignogna is denied.

**B.     Defendants' Motion to Exclude Testimony and Evidence of Plaintiff's Expert Witness, ECF No. 115, is DENIED.**

Defendants have filed a corresponding motion seeking to exclude Plaintiff's expert appraiser, Paul D. Griffith. In my view, this was a much more

straightforward challenge to resolve, as practically, Mr. Griffith's valuation rests on more solid footing, given what the Court knows factually about the matter up to this point.

From the Court's perspective, either one of the following two propositions must be true: Either it is Columbia Gas's burden to prove that the restrictions do not significantly impact the entirety of the subject properties; or rather, it must be the Herr's burden to prove that the restrictions do in fact have the negative impacts that are alleged. A review of the pertinent condemnation law makes clear that it is landowners' burden to establish the amount in which they are owed just compensation and not the other way around.

"In condemnation actions under the Natural Gas Act, it is well established that the landowner has the burden of proving the just compensation owed for the condemned property."[13] As I stated in connection with resolution of the prior expert motion, to the extent that the Herrs can show that the entirety of their property is affected in some fashion, they are free to do so through their direct testimony and their cross-examination of Mr. Griffith, and the jury can decide

---

[13] Tennessee Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres & Temp. Easements for 5.4130 Acres in Shohola Twp., Pike Cty., PA, No. 3:CV-11-028, 2014 WL 690700, at *11 (M.D. Pa. Feb. 24, 2014) (Caputo, J.).

which expert's analysis is more realistic in determining the value of the subject

easements.

To that end, I see no reason why I would not refer to the Pennsylvania

Suggested Standard Civil Jury Instructions on the issue of just compensation.

Those instructions will explain that:

> Just compensation is the difference between the fair market value of the Herr's entire property immediately before the Columbia Gas took the property and as unaffected by the taking and the fair market value of the property remaining immediately after the taking and as affected by it.[14]

> Further, fair market value takes into consideration: the present use of the property; the highest and best reasonably available use; the machinery, equipment, and fixtures forming part of the real estate taken; and any other factors relevant to the particular case.[15]

My view is that Mr. Griffith's analysis sufficiently follows the pertinent

standards for valuing condemned property such that his methodology is not

inherently flawed. Whether the assumptions upon which Mr. Griffith relied or

the inputs that he consequently selected led him to the most accurate valuation

under the facts, is, I believe, a matter for the jury decide upon hearing all of the

evidence.

---

[14]   Standard Instruction 22.10.

[15]   Standard Instruction 22.30.

Moreover, much is made by Plaintiff in the disposition of this motion as to whether the right of way agreements appended to the initial Complaints in Condemnation were incorporated by reference by this Court's December 9, 2014 Order. I treat that determination as a matter of law in a separate part below, where I conclude that they did in fact comprise part of the rights taken by Plaintiff.

Nevertheless, I do not believe that conclusion is dispositive of this motion in limine. Quite the opposite, as Plaintiff's recognize, the true dispute in this matter is the extent and the scope of the burden on the land, not necessarily the existence of the right-of-way in the first place. Thus, Plaintiff continues to argue that even if those agreements were incorporated, "Griffith disagreed with the extraordinary assumptions Mignogna made concerning that language."[16] Critically, Plaintiff distinguishes Mr. Griffith's valuation from that of Mr. Mignogna primarily on the basis that "Griffith determined that the alleged limitations and restrictions in the proposed ROW Agreements did not affect the

---

[16]   ECF No. 127 at 9.

uses of Defendants' properties" because it did not apply to farm equipment commonly utilized by the Defendants.[17]

Accordingly, my preference is to abstain from exclusion of both experts, so that the factual issues relating to the extent of the burden on the land may be appropriately tried to a jury. In turn, resolution of those issues shall inform the jury's valuation of the rights taken.

## C.    Defendant's Motion to Exclude Plaintiff's Witnesses, ECF No. 117, is DENIED.

Defendants next object to Plaintiff calling its project manager (Jacob Frederick), its engineer (Curtis Edwards), and its land agent (Michael McClain). Under Federal Rules of Evidence 401 and 701, the personal knowledge of these witnesses is relevant to the factual issue of the extent of the burden that the easements for Line 1655 in fact place on the Defendants. In particular, such testimony is also relevant for evaluating the conclusions of the two proffered experts.

Federal Rule of Evidence 402 provides that "relevant evidence is admissible." Under Rule 401, evidence is relevant if "(a) it has any tendency to

---

[17] <u>Id.</u>

make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Thus, I agree with Plaintiff when it writes, on page 7 of its opposition brief, that "Because Mignogna's assumptions are rebuttable, as he himself admits, Columbia is entitled to introduce factual evidence through its engineer that serves to invalidate those assumptions in particular and Mignogna's valuation opinion in general." Those are the precise factual determinations on which this litigation hinges. Therefore, testimony of these witnesses as to the true burden on the land is relevant under Rules 401 and 402 in that it will tend to determine factors key to valuation.

Defendants' primary argument, voiced in their papers as well as during the final pretrial conference, appears to be that presentation of such witnesses will unnecessarily lengthen the proceedings and risk conflating what rights were actually taken. I am not as concerned. Rather, as detailed more fully in subsequent parts, I will instruct the jury, as a matter of law, as to the date of the taking and the extent of the rights taken. Further instructions will also make clear that their determination is reserved solely to the issue of valuation, which necessarily embraces the factual question of the burden on the land.

Accordingly, to the extent that these witnesses' testimony goes to the validity of Mr. Mignogna's extraordinary assumptions and the burden on the land, the motion is denied.

### D. Plaintiff's Motion to Exclude Improper Lay Opinion and Other Testimony by Defendants, ECF No. 121, is GRANTED IN PART AND DENIED IN PART.

Plaintiff has identified certain portions of Defendants' deposition testimony that it seeks to exclude on the ground that it is improper lay opinion invading the province of the experts and the jury. I largely agree.

The particular statements to which Plaintiff points include references by the Defendant landowners to inhibited "development potential," technical deficiencies that they perceive in the pipeline, including "unnecessary" components and the creation of "friction," as well as the attendant risks they believe that the pipeline poses, including the potential risk of explosion. As the Third Circuit has previously instructed, "lay testimony must result from a process of reasoning familiar in everyday life, as opposed to a process which can be mastered only by specialists in the field."[18] The above testimony that Plaintiff complains of lies solely within the domain of the parties' experts and are properly excluded from lay testimony.

---

[18]  Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 81 (3d Cir. 2000).

This does not mean, however, that any of the witnesses are forbidden to testify to observations predicated upon their rationally-based perceptions. Thus, to illustrate: lay witnesses for either party would, of course, under Federal Rule of Evidence 701, be permitted to state that they observed firsthand or did not observe pooling water or runoff on the property or either heard or did not hear thunderous rolling sounds coming from below the ground, all after the installation of the pertinent pipeline. However, the technical or geological causes of such natural phenomena and their impact on the underlying property value will be left to the expert appraisers.

Likewise, this ruling would necessarily exclude testimony referencing prior valuations or appraisals, which fall within the purview of the rule against hearsay and which would otherwise be temporally irrelevant in light of my below determination as to the December 9, 2014 date of the taking.

### E.    Plaintiff's Motion to Exclude Testimony relating to Fear of Pipelines, ECF No. 113, is GRANTED IN PART AND DENIED IN PART.

Plaintiff further anticipates that the Defendants will attempt to offer evidence at trial regarding the purported dangers that natural gas pipelines present in an attempt to establish a diminution in value of their respective properties. Because it alleges that Defendants' expert opinion fails to establish

the requisite nexus between property values and the alleged stigma pipelines create, it suggests that such testimony be excluded.

The Court has reviewed the pertinent portions of Mr. Mignogna's deposition testimony and agrees that the nexus between generalized fears or stigma damages and Mr. Mignogna's valuation is unclear and sometimes minimized by Mignogna's own observations. Nevertheless, as stated earlier, the task of evaluating the bases for Mr. Mignogna's valuation rests solely with the jury, his analysis having cleared the threshold Daubert analysis.

Thus, counsel for Columbia Gas is free to cross-examine Mr. Mignogna on the extent to which stigma damages truly bear in any objective manner on the calculations contained within his report. Naturally, I expect to afford counsel wide latitude on her cross-examination of Mr. Mignogna and anticipate that the examination will be permitted to explore Mr. Mignogna's conducting (if at all) comparative or before-and-after studies. To the extent that such stigma damages are not borne out by the facts, the Plaintiff may certainly make an argument to the jury that such considerations are wholly speculative and not to be considered.

Moreover, as to any testimony of the landowners that may bear upon stigma damages, I am of the view that such testimony is more properly the province of the defense expert and would be more prejudicial than probative in the calculus of Federal Rule of Evidence 403 if offered by the landowners. I agree with the United States District Court for the Southern District of Indiana when it stated that "there must be some objective basis for translating fear . . . into market value; the mere say-so of [the landowner] is not enough."[19]

Accordingly, to the extent that the Defendants wish to establish some nexus between property values and the stigma associated with the pipeline, it should be done through the testimony of its expert and not through that of any of the landowners.

### F.     The date of the taking was December 9, 2014.

"The date of taking in condemnation suits for the purpose of computing the interest due on the award has been variously determined as (1) the date of filing a declaration of taking; (2) the date of vesting of title; (3) the date of issuance of the summons; (4) the date of filing the oath of the appraisers; (5) the date of injury to the property; (6) the date of taking actual possession of the

---

[19]   Rockies Express Pipeline, LLC v. Hopkins, No. 1:08CV751, 2012 WL 1622532, at *4 (S.D. Ind. May 9, 2012).

property; (7) the date of filing the condemnation commission's report; (8) the date an assessment list was filed; (9) the date a report on damages was filed; (10) the date of making demand for payment; (11) the date of confirmation of the commission's award; and other dates."[20] "There is no clear rule and each case appears to turn on the particular facts involved."[21] The determination must be made the district court, as "the effective date of taking is a question of law, not fact."[22]

The Defendants suggest that the land was taken as far back as March 26 2013, the date the pertinent complaints in condemnation were filed by Plaintiff. On the other hand, Plaintiff represents that valuation should be made as of December 2014, when this Court granted its Order authorizing immediate possession of the subject easements, at which time Plaintiff affirmatively took such possession. As between those two dates, the applicable law dictates that Plaintiff is correct.

---

[20]   United States v. 59.29 Acres of Land, More or Less, Situated in Hardin Cty., State of Texas, 495 F. Supp. 212, 214 (E.D. Tex. 1980) (citing 36 A.L.R.2d 337 et seq. (1954)).

[21]   Id.

[22]   United States v. 14.54 Acres of Land, More or Less, Situated in Town of Washington, Dutchess Cty., State of N.Y., 599 F. Supp. 123, 125 (S.D.N.Y. 1984).

As a practical matter, Defendants have chosen a premature date from which they suggest valuation ought to run. I would consider such an early taking date inequitable in cases like this one, where the trial court's decision, as a consequence of a subsequent appeal, takes several months to be revisited and ultimately to be made final. The short answer for rejecting Defendants' proposal is simply this: at the just compensation phase, a condemnor should not be penalized for delay more directly attributable to the measured pace of the judiciary than to its own business strategy.

Moreover, for the period of time following the filing of the complaint until the operative December 9, 2014 Order was issued, Plaintiff in fact possessed no rights of immediate possession as to the sought-after easements on Defendants' property. Consequently, it would be illogical to require Plaintiff to prepay for rights that, at the time, they still had failed to acquire.

For instance, opining on a similar date of taking issue in a condemnation action initiated by the federal government, the Supreme Court of the United States in United States v. Dow held that a taking had occurred "not . . . when the [condemnor] filed its declaration of taking" or related documents, but rather

"when [the condemnor] entered into possession of the land."[23] Critically, in <u>Dow</u>,

the Court recognized that a condemnor enters into the possession of such land

when the condemnor exercises it right to "immediate possession" of the subject

parcel or strip.[24]

I therefore believe the more appropriate base measure of the actual date of

taking is the date when this Court granted Plaintiff "immediate possession."

Paragraph 2 of this Court's Order made explicit that Plaintiff had been granted

rights to the easements it sought to condemn as of December 9, 2014:

> Columbia is granted immediate possession of easements on real
> property identified as necessary to the natural gas pipeline project
> authorized by the certificate of public convenience and necessity
> issued by the Federal Energy Regulatory Commission.[25]

Moreover, this analysis comports with underlying Pennsylvania

substantive law. "[T]aking occurs when title vests in the condemnor and

the right of entry or possession accrues."[26] The pertinent provisions of

Pennsylvania's eminent domain code on delay damages supports this

---

[23]  <u>United States v. Dow</u>, 357 U.S. 17, 21 (1958).

[24]  <u>Id.</u> at 19.

[25]  ECF No. 76 at 5 (emphasis added).

[26]  <u>Appeal of Giesler</u>, 154 Pa. Cmwlth. 48, 52, 622 A.2d 408, 410 (1993) (citing
<u>West Penn Power Company v. Thomas</u>, 52 Pa.Commonwealth Ct. 347, 352,
416 A.2d 578, 581 (1980)).

conclusion by making explicit that "[d]uring the period the condemnee remains in possession after condemnation," the landowner, "shall not be entitled to compensation for delay in payment."[27] As Pennsylvania courts interpreting this rule have emphasized, "although there are situations, such as certain easements, where one could imagine that possession is not required to effectuate the taking, if possession will occur to effectuate the taking, delay damages are not proper until possession."[28]

Lastly, because the Defendants do not point to any tangible deprivation in "the full and normal use of the property, as established by the use to which his property was devoted prior to the declaration," this Court finds no factual basis to conclude that Plaintiff came into possession of the contested easements prior to this Court's December 9, 2014 Order.[29] Accordingly, that is the date of the taking that shall apply at trial, and the jurors will be instructed as such.

---

[27]  26 Pa. Stat. and Cons. Stat. Ann. § 713(b)(2)(i) (West).

[28]  Id. at 411.

[29]  Pittsburgh N., Inc. v. Com., Dep't of Transp., 514 Pa. 316, 320, 523 A.2d 755, 757 (1987).

### G. The rights taken included the "Right-of-Way" documents appended to the Complaint in Condemnation.

"The issue of whether a taking has occurred is a question of law based on factual underpinnings."[30] Under Pennsylvania law, "the interpretation of an easement . . . like any contract, concerns a question of law." [31] Thus, "When the purposes of an express easement are not specifically stated, the court must ascertain the objectively manifested intention of the parties in light of the circumstances in existence at the time of conveyance. Whether an ambiguity exists is a question of law."[32]

A second evident question that has permeated the parties' briefs but has yet to be settled is whether the Court's December 9, 2014 Order authorizing immediate possession included the right-of-way agreements attached to the Complaints in Condemnation. Both the language employed and the applicable legal principles suggest that the rights sought in those agreements were included as part of the taking.

---

[30]  Phipps v. United States, 126 Fed. Cl. 674, 688 (2016).

[31]  Amerikohl Mining Co. v. Peoples Nat. Gas Co., 2004 PA Super 388, ¶ 9, 860 A.2d 547, 550 (2004).

[32]  PARC Holdings, Inc. v. Killian, 2001 PA Super 289, ¶ 12, 785 A.2d 106, 112 (2001).

Such is evident from the plain text of the initial Complaint in

Condemnation. Paragraph 19 of that document provides as follows:

> Specifically, Columbia Gas seeks to acquire the following rights, more or less, from Bradley E. Herr and Elizabeth M. Herr for the purpose of replacing the Pipeline on or near the Property:
>
> . . .
>
> The right of way agreement and accompanying exhibit depicting the permanent and temporary easements that Columbia Gas requires across the Property are attached as <u>Exhibit 3</u>.[33]

Paragraph 23 of that same document further states:

> Pursuant to the authority granted to it by Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f (h), Columbia Gas now seeks to take by eminent domain the easements in the Property depicted on <u>Exhibit 3</u> and described herein.[34]

Exhibit 3 contained the contested right-of-way agreements. At the Court's

October 13, 2016 pretrial conference, counsel for the Plaintiff suggested that the

attachments were supplied merely as evidence of good faith negotiation. While

that may have perhaps been a tertiary motive for their inclusion, it is evident

---

[33]   ECF No. 1 at 7 ¶ 19.

[34]   <u>Id.</u> at 8 ¶ 23.

from the language of the Complaint in Condemnation that those agreements

outlined substantive rights that Plaintiff sought to condemn.[35]

In response, Plaintiff cites to Paragraph 7 of my December 9, 2014 Order.

That provision reads as follows:

> The specific temporary construction easements and permanent easements for which Columbia is granted preliminary possession are set forth in the maps of the properties found on the docket as Exhibit 6 to the Plaintiffs' Memorandum of Law, December 5, 2014, ECF No. 67-6, Exhibit A to Proposed Order.[36]

Plaintiff suggests that the language of this paragraph limits the rights taken to

those set forth in the cited documents, which did not reference the right-of-way

agreements. That argument neglects to interpret the December 9, 2014 Order as a

whole and otherwise conflicts with separate provisions of that same document.

Moreover, Paragraph 7 defines only those rights that Plaintiff were granted in

"preliminary possession."

Further, Paragraph 3 of that same Order reads as follows:

> Specifically, Columbia is granted immediate possession of temporary construction easements, permanent easements, and certain other temporary rights on the following properties as they are described in the Complaint in Condemnation (ECF No. 1): the

---

[35] In fact, the paragraph averring good faith, ¶ 22, omits any reference to Exhibit 3, which attachment contained the right-of-way agreements.

[36] ECF No. 76 at 4–5 ¶ 7.

> Myron and Mary Jo Herr Property, the Bradley and Elizabeth Herr Property, the Hilyard Property, and the Brown Property (collectively, the "Properties").[37]

As illustrated above, the Complaint in Condemnation incorporated the right-of-way agreements by express reference. In addition, Paragraph 6 reiterates that Plaintiff retains "reasonable rights to ingress and egress on the Properties."[38]

Plaintiff further suggests that the most applicable canon of construction is expressio unius est exclusion alterius: the mention of certain rights implies the exclusion of all others. To that end, it suggests that because the Court's December 9, 2014 Order did not reference the right-of-way agreements, the rights contained therein were not taken. I disagree on both factual and legal bases. Further, the more appropriate canon is that of contra proferentem: construction of any ambiguities against the drafter.

The Court's December 9, 2014 Order authorized immediate possession of the rights outlined by Plaintiff in its proposed condemnation order and in fact, duplicated that entire proposed order so as to afford Plaintiff the exact rights it requested. To the extent that Plaintiff suggests the December 9, 2014 was meant

---

[37] Id. at 3 ¶ 3.

[38] Id. at 4 ¶ 6.

in some way to repudiate its prior assertion of rights as to the subject right-of-way agreements, it should have made such repudiation explicit.

Federal Rule 71.1 dictates that the complaint in condemnation "contain a short and plain statement of . . . the interests to be acquired." As the Supreme Court has stated, that rule "requires the filing in federal district court of a 'complaint in condemnation,' identifying the property and the interest therein that the United States wishes to take."[39] I therefore agree with Defendants' argument that "[w]hat controls is the acquired rights, not intent."[40] Of course, Plaintiff remains free to advance factual arguments relating to the burden on the land caused by the condemnation, such as whether the right-of-way agreements preclude the use of Defendants' farm machinery.

In my view, however, the somewhat puzzling facet of this particular dispute has always been this: Plaintiff possesses certain rights that it claims it need not utilize to the fullest extent; Defendants wish that Plaintiff would not exercise their rights in the subject parcels to the fullest extent. Certainly, bargaining positions are already orientated such that the parties can agree in

---

[39]   Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 4 (1984).

[40]   ECF No. 128 at 8.

writing as to the extent of Plaintiff's usage of and payment for those portions

Defendant's land without the aid of a federal jury trial.

## IV.    CONCLUSION

The pending motions in limine are disposed of in accordance with the

foregoing reasoning. Jury selection and trial is set to begin on November 14, 2016

at 9:30 a.m. in Williamsport. Though the Court is prepared to proceed to trial, as

I have gained familiarity with this dispute over the years, it increasingly seems as

though resolution would be better left to the Herrs and Columbia Gas, rather

than to an arbitrary group of eight laypeople. In my view, it is the parties who

know the land and the subject natural gas operations best and who occupy a

prime position to appropriately value the contested easements, even if such

valuation ultimately requires compromise on both sides—a compromise that

recognizes the risk inherent in relinquishing the ultimate determination to

empaneled strangers.

An appropriate Order follows.

BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge